**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **JOSHUA CACHO,** a Texas resident, | § §<br>§ |
| **Plaintiff,** | § §<br>§ |
| v. | § §<br>§ |
| **JGW DEBT SETTLEMENT, LLC,** a<br>Nevada Limited Liability Company,<br>**DIAMOND DEBT RELIEF LLC,** a New York<br>Limited Liability Company, **ARNOLD & SMITH**<br>**LAW, PLLC,** a Oklahoma Professional<br>Limited Liability Company, | § §<br>§<br>§<br>§<br>§<br>§<br>§ |
| **Defendants.** | § §<br>§ |

3:25-cv-00142-DB

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1.      Plaintiff JOSHUA CACHO ("Plaintiff") is a natural person, a resident of the Western

District of Texas, and was present in El Paso, Texas for all calls relevant to this case.

2.      Defendant JGW DEBT SETTLEMENT, LLC ("JGW") is a Limited Liability Company

organized and existing under the laws of Nevada can be served via registered agent Wilmington

Trust SP Services, Inc at 3993 Howard Hughes Ste 250 Las Vegas, Nevada 89169.

3.      Defendant DIAMOND DEBT RELIEF LLC ("Diamond") is a Limited Liability

Company organized and existing ender the laws of New York and can be served via registered

agent Gerald Binman at 535 Neptune Avenue, Suite 3E Brooklyn, New York 11224.

4.      Defendant ARNOLD & SMITH LAW, PLLC ("ASL") is a Professional Limited Liability

Company organized and existing ender the laws of Oklahoma and can be served at 115 E California Ave STE 450 Oklahoma City, Oklahoma 73104.

## JURISDICTION AND VENUE

**5.**      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

## PERSONAL JURISDICTION

**6.**      This Court has specific personal jurisdiction over Defendants because Defendants purposefully availed themself to the State of Texas and to this District, and there is a sufficient relation between Defendants' purposeful contacts with Texas and the litigation:

    a)  Defendants target Texas when marketing debt relief services and products and regularly conduct business in this District, including telephone solicitation.

    b)  Defendants called Plaintiff's El Paso-area phone number (915) to generate leads for their services.

    c)  These calls to Texas injured Plaintiff in Texas, creating a causal link among Defendants, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v. Mont. Eight Jud. Dist. Ct.,* 141 S. Ct. 1017 (2021

## VENUE

**7.**      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District.

**8.**      This Court has venue over Defendants because the calls at issue in this case occurred in

this District.

## THE TELEPHONE CONSUMER PROTECTION ACT

## OF 1991, 47 U.S.C. § 227

9.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available

3

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

14.    The TCPA provides a private cause of action to persons who receive calls in violation of 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

15.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18.    *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears

---

[1]*See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

21.     The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers. *Id*. at § 227(a)(1)

22.     As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

23.     Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding:

[A]  predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be

called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.[1]

24.     In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

25.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

26.     The Texas Business and Commerce Code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in Texas.

27.     The Plaintiff may seek damages of violations of Texas Business and Commerce Code § 302.101 of to $5,000.00 per violation, reasonable costs of prosecuting the action, court costs investigation costs, depositions expenses, witness fees, and attorney's fees.

28.     Texas Business and Commerce code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading or deceptive act of practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right of remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

29.     The use or employment by any person of a false, misleading, or deceptive act or practice causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

### TEXAS BUSINESS AND COMMERCE CODE 305.053

30.     A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action in this state against the person who originates the communication for")

(1) an injunction;

(2) damages in the amount provided by this section; or

(3) both an injunction and damages.

(b) A plaintiff who prevails in an action for damages under this section is entitled to the greater of:

(1) $500 for each violation; or

(2) the plaintiff's actual damages")

(c) If the court finds that the defendant committed the violation knowingly or intentionally, the court may increase the amount of the award of damages under Subsection (b) to not more than the greater of:

(1) $1,500 for each violation; or;

(2) three times the plaintiff's actual damages."

### FACTUAL ALLEGATIONS

31.     Plaintiff's personal cell phone ending in 3258 has been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first call received from Defendant Diamond's employees' Marketers.

7

32.     Plaintiff never registered his personal cell phone number ending in 0806 to the National Do-Not-Call Registry.

33.     Plaintiff personally registered the cell phone 3258 on the National-Do-Not-Call Registry on November 21, 2023.

34.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him or his number ending in 3258 from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

35.     Plaintiff's cellular telephone 3258 is a private residential telephone, used for non-business purposes only.

36.     Plaintiff's cellular telephone 0806 is a private residential telephone, used for non-business purposes only.

37.     Defendant ASL is a law firm that hired JGW to market its products and services.

38.     Defendant JGW operates as a debt relief organization.

39.     Defendant Diamond operates as a marketing company and makes unsolicited calls to potential clients soliciting debt relief services exclusively for JGW and ASL.

40.     Defendant ASL hired JGW to market its legal services, knowing that any client sent to ASL by JGW would come from illegal telemarketing, conducted by JGW and or agents hired by JGW.

41.     ASL is barred by ethics from directly placing unsolicited phone calls on their own behalf.

42.     Plaintiff filed a lawsuit against ASL for unsolicited alleged calls on December 18, 2023, *Cacho v. DMB Financial, LLC et al No. 3:23-cv-00455-FM (W.D.TX)*. Plaintiff reached a settlement agreement with ASL in which an officer of ASL signed on 1/15/2024.

43.     All calls alleged herein that are violations of the TCPA and other corresponding federal

and state laws must be considered knowing and willful against all Defendants as ASL knew Plaintiff did not want the services of ASL, or to be solicited by any debt relief company and more specifically ASL's law firm.

44.     Defendant Diamond made at least twenty (20) unauthorized unsolicited calls to Plaintiff's phones. Sixteen (16) solicitation phone calls were made to Plaintiff's personal phone ending in 3258, and four (4) unauthorized calls to his personal phone ending in 0806, without his written or verbal consent, referred to herein as ("The Calls", or "the calls").

45.     Calls #1-15, between January 17, 2025, through January 24, 2025, Plaintiff received at least fifteen (15) solicitation calls from Diamond. Plaintiff answered each time with "Hello" and after a 3-5 second silent pause in line, was greeted by an audible "Boop" noise, followed by another 1-2 silent pause, and then was greeted by an employee of Diamond, claiming to be calling from "National Debt Relief" soliciting debt relief services.

46.     On each call described above Plaintiff would engage the caller to verify who was responsible for each call and would provide his full name, social, date of birth, and other qualifying questions. Each call would disconnect at some point on the caller's end without notice.

47.     Call #16, Plaintiff received a call to his personal cell phone ending in 3258 on January 24, 2025, at 2:35 PM from Diamond, displaying the spoofed phone number of 915-272-1790. Plaintiff answered with "Hello" and after a 3-5 second silent pause in line, was greeted by an audible "Boop" noise, followed by another 1-2 silent pause, and then was greeted by an employee of Diamond, claiming to be calling from "National Debt Relief." Plaintiff engaged the caller for the sole purpose of identifying the party(s) responsible for the previous 15 calls from solicitors of "National Debt Relief."

**48.** Plaintiff informed the employee of Diamond that his phone was dying and asked the employee of Diamond to call him back on his phone ending in 0806 to continue the call.

**49.** Call #17, Plaintiff received a call less than a minute later to his phone ending in 0806 from the same employee of Diamond that called him on call #16 described above in Par 44.

**50.** The employee of Diamond asked Plaintiff a series of qualifying questions, such as name, date of birth, amount of debt, social security number, email address, and banking information.

**51.** After a few minutes with the employee of Diamond, Plaintiff was transferred to "Kyle" another employee of Diamond.

**52.** The call dropped after Kyle introduced himself.

**53.** Call #20, Kyle called Plaintiff from 929-901-0884, but the call dropped again without Kyle identifying Diamond or JGW.

**54.** Call #21, Plaintiff called 929-901-0884, the number that appeared on his caller ID from Diamond's employee Kyle, seconds after the previous dropped call, and was greeted by Kyle of Diamond, on this call Plaintiff received information connecting Diamond, JGW and ASL with The Calls. Plaintiff informed Kyle to make sure that nobody from his company calls him back and hung up the phone.

**55.** Call #22, Kyle called Plaintiff from 929-901-0884, Plaintiff answered with "Hello" and was greeted by Kyle confirming he understood Plaintiff's DNC Request but solicited him anyways. Plaintiff provided another DNC Request and hung up the phone.

**56.** Below, *Table A, and Table B*, are tables displaying the calls received from Defendant ASL's agent JGW's agent Diamond.

Call made to 915-259-3258

Table A

10

| No: | Caller ID: | Date: | Time: | Notes: |
|---|---|---|---|---|
| 1 | 915-298-0327 | Jan 17, 2025 | 11:11 AM | Unsolicited call from Diamond |
| 2 | 915-944-2149 | Jan 17, 2025 | 11:25 AM | Unsolicited call from Diamond |
| 3 | 915-249-3814 | Jan 17, 2025 | 11:27 AM | Unsolicited call from Diamond |
| 4 | 915-308-8234 | Jan 17, 2025 | 3:11 PM | Unsolicited call from Diamond |
| 5 | 915-237-3603 | Jan 17, 2025 | 3:28 PM | Unsolicited call from Diamond |
| 6 | 915-239-1372 | Jan 21, 2025 | 11:28 AM | Unsolicited call from Diamond |
| 7 | 915-759-9584 | Jan 21, 2025 | 10:29 AM | Unsolicited call from Diamond |
| 8 | 915-755-6584 | Jan 22, 2025 | 11:06 AM | Unsolicited call from Diamond |
| 9 | 915-249-6510 | Jan 23, 2025 | 2:55 PM | Unsolicited call from Diamond |
| 10 | 915-821-6810 | Jan 23, 2025 | 3:18 PM | Unsolicited call from Diamond |
| 11 | 915-400-0730 | Jan 23, 2025 | 4:30 PM | Unsolicited call from Diamond |
| 12 | 915-400-6372 | Jan 23, 2025 | 4:42 PM | Unsolicited call from Diamond |
| 13 | 915-226-0193 | Jan 24, 2025 | 9:04 AM | Unsolicited call from Diamond |
| 14 | 915-751-7839 | Jan 24, 2025 | 12:08 PM | Unsolicited call from Diamond |
| 15 | 915-407-7123 | Jan 24, 2025 | 1:33 PM | Unsolicited call from Diamond |
| 16 | 915-272-1790 | Jan 24, 2025 | 2:35 PM | Unsolicited call from Diamond |

Calls made to 915-200-0806

Table B

| No: | Caller ID: | Date: | Time: | Notes: |
|---|---|---|---|---|

11

| 1 | 915-777-3283 | Jan 24, 2025 | 2:37 PM | Direct call back from Diamond |
|---|---|---|---|---|
| 2 | 929-201-0884 | Jan 24, 2025 | 2:46 PM | missed call from Diamond |
| 3 | 929-901-0884 | Jan 24, 2025 | 2:46 PM | missed call from Diamond |
| 4 | 929-901-0884 | Jan 24, 2025 | 2:47 PM | Unauthorized call from Diamond |
| 5 | 929-901-0884 | Jan 24, 2025 | 2:51 PM | outgoing call - received documents |
| 6 | 929-901-0884 | Jan 24, 2025 | 3:29 PM | Unauthorized call from Diamond |

57.    Defendant ASL knew Plaintiff did not want to be solicited for any services to any phone he had and should have provided JGW with a DNC list including but not limited to Plaintiff's name, and other identifying information.

58.    Defendant JGW and Diamond both failed to demand a DNC list be provided to them before making any marketing calls on behalf of JGW and ASL.

59.    Each of the twenty (20) calls made to Plaintiff's phones, sixteen (16) calls made to Plaintiff's 3258, and four (4) calls made to 0806 are knowing and willful TCPA violations against all Defendants for failing to demand a DNC list from ASL, and therefore failing to adhere to Plaintiff's DNC Request.

60.    Plaintiff did not provide his phone number to Defendants or their agent(s), sub-agent(s), and/or employees, at any point, other than to inform them to not solicit his phone at any point.

61.    Upon information and belief, Defendants did not have a written do-not-call policy while their agent(s), sub-agent(s), and/or employees, were sending Plaintiff the calls.

62.    Upon information and belief, Defendants ASL, JGW and Diamond did not

12

train their agent(s), sub-agent(s), and/or employees, who engaged in telemarketing on the existence and use of any do-not-call list.

63.    Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3) (requiring telemarketers to honor and record DNC requests when made).

64.    Defendants ASL, Diamond and JGW knew or should have known the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the calls complained of herein violated the TCPA and its regulations.

65.    Defendants ASL, Diamond and JGW knew or should have known the requirements for making TCPA and Texas sales-compliant telemarketing calls, and thus knew or should have known that the unauthorized solicitation calls and the many disregarded DNC requests complained of herein violated the TCPA, Texas Business Commerce Code 302.101 and all of their regulations.

66.    Defendants violated Texas Penal Code § 38.12 when it with intent to obtain professional employment used coercion, duress, fraud, intimidation, misleading, deceptive, and false claims. Penal Code 38.12(d)(1)(2)(E-F) Barratry and Solicitation of Professional Employment

67.    A person who was solicited by conduct violating Section 38.12 (Barratry and Solicitation of Professional Employment) (a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may

file a civil action against any person who committed barratry

68.    A person who prevails under Subsection (c) shall recover from each person who engaged in barratry: (1) A penalty in the amount of $10,000; (2) actual damages caused by the prohibited conduct; and (3) reasonable and necessary attorney's fees.

69.    No emergency necessitated these calls.

70.    Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

**DEFENDANT ASL AND JGW ARE VICARIOUSLY LIABLE FOR THE CALLS MADE BY**

**JGW'S AGENT DIAMOND**

71.    ASL and JGW are "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as the employees of JGW's agent Diamond. *In re Joint Pet. filed by Dish Network, LLC*, 28 F.C.C.R. 6574, 6582 (2013).

72.    ASL authorized JGW to market its services and products through telemarketing means and was aware JGW would hire Diamond to place illegal telemarketing calls to solicit said products.

73.    ASL's agent JGW's agent Diamond made unsolicited phone calls to market the products and services of Defendant JGW and ASL.

74.    Diamond markets for both JGW and ASL.

75.    JGW's contract agreement has a section in it soliciting the services of ASL and a contractual agreement of ASL, which the Attorney's Fee's portion states:

**"Client is engaging A&S Law to be available to defendant Client in any Collective Litigation. For these legal services, Client agrees to pay A&S Law a monthly fee of $17.99**

14

**per month (the "Fee"). Every fee shall be considered earned when paid and is nonrefundable."**

76.     Two managing members of ASL signed the contract agreement sent to Plaintiff by JGW, Todd W. Arnold, and Dennis J. Smith.

77.     ASL sets age and debt requirements for JGW for potential clients they will send.

78.     JGW writes the script which is used by Diamond, and trains each and every employee of Diamond that they hire directly on the usage of the scripts.

79.     ASL's instructed JGW on which states to call and sets the minimum qualifications for Diamond to qualify the prospective clients.

80.     ASL pays JGW and JGW pays Diamond directly for each client sent as a result of the illegal solicitation telemarketing calls made.

81.     ASL has a contract with JGW and JGW has a contract with Diamond and both ASL and JGW are fully aware that every client received through Diamond has been sent to them initially through illegal telemarketing unsolicited calls.

82.     JGW is the agent of ASL, Diamond is the agent of JGW, and Diamond is the sub-agent of ASL.

### TEXAS BUSINESS AND COMMERCE CODE 302.101

83.     Plaintiff was located in Texas at all times during the calls at issue.

84.     Plaintiff has been a Texas resident since July 2023.

85.     On March 31, 2025, Plaintiff searched for a telephone solicitation registration for Defendants JGW and ASL at https://direct.sos.state.tx.us/telephone/TelephoneSearch.asp.

86.     Plaintiff searched: initial registration, bond canceled, pending, renewal registration, closed, and suspended registration.  Plaintiff did not find any registration for Defendants JGW

and ASL.

87.     Defendants ASL and JGW have never been registered to telephone solicit from Texas, or into Texas.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

88.     Defendants and/or their agent(s), sub-agent(s), and/or employee(s)' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

89.     Defendants and/or their agent(s), sub-agent(s), employee(s), and/or coworker(s)' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

90.     Defendants and/or their agent(s), sub-agent(s), and/or employee(s)' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

91.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phone.

## PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

92.     The calls were to Plaintiff's cellular phone numbers 915-239-3258, 915-200-0806 which are Plaintiff's personal phones that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when

cooking, and sending and receiving text messages. Plaintiff further has his cell phones registered in his personal name, pays the cell phones from his personal accounts, and the phones are not primarily used for any business purpose.

<u>**CAUSES OF ACTION:**</u>

<u>**COUNT ONE:**</u>
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**
**(against all Defendants)**

**93.**     Plaintiff incorporates the preceding paragraphs 1-92 as if fully set forth herein.

**94.**     Defendants, and/or their agent(s), sub-agent(s), and/or employee(s) called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**95.**     Plaintiff was statutorily damaged at least twenty (20) times under 47 U.S.C. § 227(c)(3)(F) by Defendants, and/or their agent(s), sub-agent(s), and/or employee(s) by the telemarketing calls described above, in the amount of $500.00 per call.

**96.**     Plaintiff was further statutorily damaged because Defendants, and/or their agent(s), sub-agent(s), and/or employee(s)' calls willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

**97.**     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT TWO
### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate
### (against all Defendants)

98.    Plaintiff incorporates the preceding paragraphs 1-97 as if fully set forth herein.

99.    Defendants, and/or their agent(s), sub-agent(s), and/or employee(s) made at least Twenty-one (21) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code § 302.101.

100.    As a result of Defendants, and/or their agent(s), sub-agent(s), and/or employee(s)' violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation.  Tex. Bus. and Com. Code § 302.302(a).

101.    As a result of Defendants, and/or their agent(s), sub-agent(s), and/or employee(s)' calls violations of Tex. Bus. and Com. Code § 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.  Tex. Bus. and Com. Code § 302.302(d).

## COUNT THREE
### Violations of Texas Business and Commerce Code 305.053
### (against all Defendants)

102.    Plaintiff incorporates the preceding paragraphs 1-101 as if fully set forth herein.

103.    Defendants, and/or their agent(s), sub-agent(s), and/or employee(s) called Plaintiff's private residential telephone number which violated 47 U.S.C. § 227 (c).

104.    As a result of Defendants, and/or their agent(s), sub-agent(s), and/or employee(s) violations of Tex. Bus. And Com. Code § 305.053 Plaintiff is entitled to the greater of $500; or the Plaintiff's actual damages, for each violation. Tex. Bus. And Com. Code §

18

305.053(b)(1)(2).

**105.**     Plaintiff is entitled to an award to not more than the greater of $1,500 for each knowing or willful violation of Tex. Bus. And Com. Code § 305.053(c)(1)(2).

## COUNT FOUR

### Violation of 82.0651 Civil Liability for Prohibited Barratry

### (Against All Defendants)

**106.**     Plaintiff incorporates the preceding paragraphs 1-105 as if fully set forth herein

**107.**     Barratry is the solicitation of employment to prosecute or defend a claim with the intent to obtain a personal benefit. *State Bar of Tex. V. Kilpatrick*, 874 S. W.2d 656, 658 n.2 (Tex.1994).

**108.**     Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct, entitled "Prohibited Solicitations and Payments.

**109.**     Rule 7.03 provides, in relevant part, as follows:

(a)  A lawyer shall not by in-person contact as defined in paragraph (f) seek professional employment concerning a matter arising out of a particular occurrence or event, or series of occurrences or events, from a prospective client or nonclient who has not sought the lawyer's advice regarding employment or with whom the lawyer has no family or past or present attorney-client relationship when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain…

As used in paragraph (a), "regulated telephone or other electronic contact" means any electronic communication initiated by a lawyer or by any person acting on behalf of a lawyer or law firm that will result in the person contacted communicating in a live, interactive manner with any other person by telephone or other electronic means. *Id.* R. 7.03(a), (f)

**110.**     A lawyer shall not send, or deliver, or knowingly cause another person to send, deliver, or transmit, a communication that involves coercion, duress, overreaching, intimidation, or undue influence.

19

111.    Plaintiff was solicited for legal services by Defendants. Plaintiff did not initiate communication with Defendants.

112.    Plaintiff was targeted by Defendants despite not having a preexisting relationship with Defendants.

113.    Defendants' conduct violated at least Section 38.12(b) of the Penal Code and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct.

114.    Plaintiff was solicited on behalf of Defendants so that Defendants would benefit financially.

115.    Defendants knew or should have known that its authorization to tele-solicit clients was in violation of Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct and Section 38.12(b) of the Texas Penal Code.

116.    A person commits an offense if, with intent to obtain an economic benefit the person solicits employment, either in person or by telephone, for himself, or for another. Penal Code Section 38.12(a)(2).

117.    A person commits an offense if, with intent to obtain an economic benefit the person pays, or gives of offers to pay or give a person money or anything of value to solicit employment. Penal Code Section 38.12(a)(4).

118.    Defendants violated Texas Penal Code to § 38.12 when it solicited employment for itself by telephone to obtain economic benefit. Penal Code 38.12(a)(2) Barratry and Solicitation of Professional Employment

119.    Defendants violated Texas Penal Code § 38.12 when it with intent to obtain professional employment used coercion, duress, fraud, intimidation, misleading, deceptive, and false claims. Penal Code 38.12(d)(1)(2)(E-F) Barratry and Solicitation of Professional

Employment.

120.    A person who was solicited by conduct violating Section 38.12 (Barrarty and Solicitation of Professional Employment) (a) or (b), Penal Code, or Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, regarding barratry by attorneys or other persons, but who did not enter into a contract as a result of that conduct, may file a civil action against any person who committed barratry.

121.    A person who prevails under Subsection (c) shall recover from each person who engaged in barratry: (1) A penalty in the amount of $10,000; (2) actual damages caused by the prohibited conduct; and (3) reasonable and necessary attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendants ASL, JGW, and Diamond jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendants and/or their agent(s), employee(s), and/or coworker(s)' calls violates the TCPA, and Texas Business and Commerce;

C.    An award of $1,500 per call in statutory damages arising from the 17TCPA 47 U.S.C §227(c) intentional violations jointly and severally against the corporations for 20 calls;

D.    An award of $1,500 in statutory damages arising from violations of the Texas

Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for 20 calls;

E.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for 21 calls;

F.    An award of $10,000 in statutory damages per defendant arising from violations of Section 38.12(b) of the Penal Code and Rule 7.03 of the Texas Disciplinary Rules of Professional Conduct;

G.    An award to Plaintiff of interest, costs, and attorneys' fees, as allowed by law and equity;

H.    Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

April 25, 2025,                                              Respectfully submitted,

*Joshua Cacho*

Joshua Cacho
Plaintiff, Pro Se
P.O. Box 26971
El Paso, TX 79926
Jcacho1848@gmail.com

22